## UNITED STATES *v.* SAKS & CO. (No. 2637) [1]

SHOE BUCKLES—BEAD AND BEADED ARTICLES.

Certain articles invoiced as "shoe buckles," used on shoes only for ornamentation, are not shoe buckles under paragraph 346, Tariff Act of 1922. Not being in chief value of metal, they are not metal buckles to be worn on the person, under paragraph 1428. Being in chief value of beads and having their faces entirely covered with the beads, they are dutiable under paragraph 1403, as articles in chief value of beads but not ornamented with beads; and, for the same reason, are excluded from the provision of paragraph 1430 for "articles * * * ornamented with beads." Certain other articles, identical in every respect except that their faces are of leather and are not wholly covered with the beads, are, for lack of evidence to differentiate them, denied and given the same classifications.

---

[1] T. D. 41259.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 49383

[Reversed and remanded.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Margaret M. Burnett,* special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellees.

[Oral argument October 28, 1925, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Imported merchandise, described in the invoice as "shoe buckles," was assessed for duty by the collector at 80 per centum ad valorem as articles in chief value of metal to be worn on or about or attached to the person, under paragraph 1428 of the Tariff Act of 1922, the pertinent part of which is as follows:

PAR. 1428. * * * and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags, and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 80 per centum ad valorem; * * *.

Several alternative claims were made in the protest, only two of which, we think, are entitled to serious consideration. It was claimed that the imported articles were specifically provided for as "shoe buckles, made wholly or partly of iron, steel, or other base metal," under paragraph 346 of the Tariff Act of 1922, which reads as follows:

PAR. 346. Belt buckles, trouser buckles, and waistcoat buckles, shoe or slipper buckles, and parts thereof, made wholly or partly of iron, steel, or other base metal, valued at not more than 20 cents per hundred, 5 cents per hundred; valued at more than 20 and not more than 50 cents per hundred, 10 cents per hundred; valued at more than 50 cents per hundred, 15 cents per hundred; and in addition thereto, on all of the foregoing, 20 per centum ad valorem.

It was also claimed that the articles in question were properly dutiable as "articles not ornamented with beads, * * * composed wholly or in chief value of beads," at 60 per centum ad valorem, under paragraph 1403 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1403. * * * fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, composed

wholly or in chief value of beads or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones, 60 per centum ad valorem; * * *

On the trial in the court below the witness, Edward Cohen, for the importers, testified in part as follows:

Q. Now, do you know how these are used?—A. They are put on shoes.

Q. Is that the use for which they are intended?—A That is what they are bought for.'

Q. Referring to the jet one, that is made in part of metal, is it?—A. Yes; a metal back.

Q. That part there to hold it on, I suppose?—A. Yes. sir.

Q. That is this cotton backing there?—A. That is so it won't cut.

*　　*　　*　　*　　*　　*　　*

Q. Just how are these used?—A. They are put on the front of the shoe right on the vamp here.

Q. There is no strap attached to them, is there?—A. No; they are just plain. There is no strap arrangement.

_ Q. *They don't attach two parts of the shoe together at all like the ordinary buckle?*— A. *No; they are just put on for ornamental purposes.*

Q. *Why do you call it a buckle? It doesn't have the shape of a buckle.*—A. *That particular buckle is made for the shoe that comes up rather high and it is put on for an ornament.*

Q. It is simply for ornamentation?—A. Absolutely. The shoe would not be complete without it. The shoe could not be worn without that buckle. It would be incomplete.

Q. You mean it would have to have something on that spot to cover it?—A. Yes; there is an elastic there and the elastic would show.

Q. Do you ever call these slides?—A. No; *we call them buckles, that is all we ever call them.* In fact I designed that buckle and buy them over there myself.

Q. From what kind of firm do you buy them?—A. A shoe-buckle firm.. That is a little woman over in Paris who makes nothing but buckles.

*　　*　　*　　*　　*　　*　　*

Q. I notice items 154 and 148 says leather.—A. Yes; we have the same buckle; for instance, for patent-leather shoe it has a leather backing and beading. * * *

*　　*　　*　　*　　*　　*　　*

Q. Are you claiming on this item of leather, 154?—A. With the leather backing.

Q. You don't seem to have any samples of that?—A. No; we do not. It is the same buckle as this, only it has leather, with the same sort of imitation jet

*　　*　　*　　*　　*　　*　　*

Q. How does it look?—A. It looks exactly like that, but instead of having satin where this is sewed on it has leather, and in not quite as many jet.

Q. You mean that the beads are sewed on the leather?—A. Yes, sir.

Q. Just a few jet beads?—A. Yes; not quite as many as there are there. The leather shows. Where this is all covered up the leather shows.

Q. In all of these, beads are put on for ornamentation, are they not?—A. Yes, sir. (Italics ours.)

Mr. Abraham Straus, an examiner of merchandise at the port of New York, testified that the articles were made in part of metal, and that the component material of chief value was glass beads.

From an examination of the exhibits it appears that the articles consist of a metal back or frame covered with cloth and a narrow

strip of metal across the back which is used to attach the article to a shoe. The face of the article is made up of glass beads so arranged as to give the article its ornamental character. It is an ornamental article and, in so far as it is used on shoes, serves no other purpose.

The Board of General Appraisers held that the imported articles were shoe buckles made partly of iron, steel, or other base metal, and were, therefore, specially provided for in paragraph 346, *supra*, and sustained the protest.

It is claimed by the Government that the articles in question are properly dutiable under the following provisions of paragraph 1430 of the Tariff Act of 1922:

PAR. 1430. * * * embroideries not specially provided for, and all fabrics and *articles* embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliqued, scalloped, *or ornamented with beads*, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching; *all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, when composed wholly or in chief value of* yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, *beads*, bugles, spangles, or products of cellulose provided for in pargraph 1213, 75 per centum ad valorem. (Italics ours.)

"Buckle" is defined by Funk & Wagnalls New Standard Dictionary, 1925, as—

A device for fastening, consisting of a metal frame having one or more movable tongues, teeth, or catches. The buckle is usually fastened by one side to the end of the same strap.

A shoe buckle is defined by the same authority as—

A buckle for fastening the shoe by a strap across the instep, or one worn on the shoe for ornament.

The Century Dictionary and Cyclopedia defines the word buckle as—

A clasp consisting of a rectangular or curved rim, with one or more movable tongues secured to the chape at one side or in the middle, and long enough to rest upon the opposite side; used for fastening together two straps or belts or the ends of the same strap, or for some similar purpose. It is sewed or otherwise fastened to one band or end, and the other is passed through it, being kept from slipping by the tongue or tongues. Buckles for use in dress have often been made highly ornamental, especially for shoes.

Shoe buckle is defined by the same authority as—

A buckle for fastening the shoe on the foot, generally by means of a latchet or strip passing over the instep, of the same material as the shoe. Shoes were secured by buckles throughout the latter part of the seventeenth century and nearly the whole of the eighteenth. They were worn by both men and women. Such buckles were sometimes of precious material, and even set with diamonds. The fashion has been restored at intervals, but most contemporary shoe buckles are sewed on merely for ornament.

Our attention has been called to the definition of buckle as found in Webster's New International Dictionary. It is there defined as follows:

> 1. Buckle: A device for uniting two loose ends, as of a belt or strap, consisting of a frame fixed to one end and holding the other end, which is passed through the frame by a catch of some kind, commonly by a tongue which goes through a hole in the end.
>
> 2. An ornamental device *resembling a buckle* as above, used chiefly by women to adorn the hair, waistband, shoes, etc.

There is no evidence in the record that these articles are commercially known either as buckles or as shoe buckles. There is no testimony to the effect that they are commonly known as shoe buckles. On the contrary, the witness, Cohen, in answer to the question, "Do you ever call these slides?" said: "No; *we* call them *buckles*, that is all we ever call them. In fact I designed that buckle and buy them over there myself." (Italics ours.)

As to the use to which these particular articles are put, the same witness testified as follows:

> Q. Now, do you know how these are used?—A. They are put on shoes.
> Q. Is that the use for which they are intended?—A. That is what they are bought for.

He does testify that these articles are used for ornamental purposes on shoes, and that they are called buckles by his firm; but does it follow from such testimony that they are shoe buckles and come within the provision for such articles in paragraph 346, *supra?* They do not seem to have any of the essential characteristics of a shoe buckle as that article is defined by the dictionaries, except that they are ornamental and are used on shoes. However, from the shape and appearance of these articles, it would seem to us that they are adapted to other uses of ornamentation.

In the case of *United States* v. *Weiss*, 13 Ct. Cust. Appls. 14, T. D. 40860, in an opinion by Graham, Presiding Judge, this court said:

> In order to bring the articles in question within the scope of paragraph 346, it must affirmatively appear that they are belt buckles. If they are denominated and known to the trade as buckles only, and are, as is conceded here, designed to be worn on apparel or carried on or about or attached to the person, then they are included within paragraph 1428. This is, in our opinion, as far as the evidence in the case goes. The burden was on the importer to prove that the merchandise was what he claimed it to be, belt buckles, and not what the collector had found it to be, namely, clasps. Unless he did this, or unless we can clearly see by inspection of the samples the classification is wrong, it should stand. To prove the articles are buckles is not sufficient to prove they are belt buckles.

The court cited the following authorities: *Pritchard & Co.* v. *United States*, 2 Ct. Cust. Appls. 247, T. D. 31974; *Hampton, jr., & Co.* v. *United States*, 12 Ct. Cust. Appls. 582, T. D. 40695.

The evidence in the case clearly establishes, and the board correctly held, that the imported articles are not in chief value of metal, and, therefore, are not included within the provisions of paragraph 1428, *supra*, for articles composed of metal, designed to be worn on or about the person. We are unable to agree, however, with that part of the board's decision which holds that the articles in question are provided for in paragraph 346, *supra*, as "shoe buckles."

There is no evidence in the record that these articles are commonly or commercially known as shoe buckles; and, although they are used as ornaments on shoes, they do not, in our opinion, conform to the dictionary definitions of such articles.

It was claimed by the appellees in their protest that the imported articles were dutiable under paragraph 1403, *supra*, as:

\* \* \* *articles not ornamented with beads*, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, *composed wholly or in chief value of beads* or spangles other than imitation pearl beads and beads in imitation of precious or semiprecious stones. (Italics ours.)

The Government claims, however, that the articles in question are more aptly described in paragraph 1430, *supra*, as "articles, \* \* \* *ornamented with beads*," when composed wholly or in chief value of beads.

We are of the opinion, from the testimony and from an examination of the two exhibits in the case, that these articles are not ornamented with beads. Beads are used, of course, for purposes of ornamentation; but, in this instance, they are used as a component material in the manufacture of an *ornamental* article, and were not added as ornaments to an article otherwise completely manufactured.

It appears from the testimony that the importation consisted in part of articles of which we have no representative samples. They are described in the testimony substantially as follows: The metal back or frame is covered with leather, instead of cloth as in Exhibits Nos. 1 and 2, and the beads are less in number and are so arranged as to permit a portion of the leather to be seen between the beads, whereas, in the exhibits before us, the beads completely cover the face of the frame.

It may be that these articles are ornamented with beads; and, if they had been classified as such articles under paragraph 1430, *supra*, the evidence in the case would probably have been insufficient to overcome the presumption of correctness attending the decision of the collector. But we are not confronted with that situation. The case has been presented by counsel for the parties as if there was no distinction between the articles represented by Exhibits Nos. 1 and 2 and those not represented by samples; and, in the absence of such

samples, we are unable to say that a material distinction does in fact exist.

All of the articles being in chief value of glass beads, they are, for the reasons stated, properly dutiable under paragraph 1403, *supra;* and the judgment is reversed and the cause remanded for proceedings not inconsistent herewith.

*Reversed* and *remanded.*

SMITH, Judge: On the record as made I concur in the conclusion reached.