LOUISVILLE BEDDING Co. *v.* UNITED STATES (No. 2705)[1]

1. "COMPOSED OF"—"MADE OF"—"MANUFACTURED OF"—"WOOLEN"—RAGS OF WOOL AND COTTON.

When the terms "composed of," "made of," "manufactured of," etc., are used in tariff statutes, it is sufficient in most cases if the specified material is the one of chief value or is the predominant one.    In the provision of paragraph 1105, Tariff Act of 1922, for "woolen rags," the word "woolen" is so construed; and rags of cotton and wool, resulting from cutting out clothes, 50 to 60 per centum wool in bulk and about 50 per centum in weight, the wool being chief value, used, after shredding, for stuffing mattresses, packing journal boxes, wiping, etc., are so classifiable rather than as waste not specially provided for under paragraph 1457.

2. CONSTRUCTION, PARAGRAPH 1105, TARIFF ACT OF 1922—WOOL WASTES.

Paragraph 1105, Tariff Act of 1922, providing for many different wool wastes is not limited, under the rule of *ejusdem generis* or *noscitur a sociis*, to such as are used in the woolen industry.    *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886.

United States Court of Customs Appeals, January 13, 1927

APPEAL from Board of United States General Appraisers, Abstract 50314

[Affirmed.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Jerome G. Clifford*, special attorneys, of counsel, for the United States.

[Oral argument October 8, 1926, by Mr. Place and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise here involved consists of rags, the component materials of which are wool and cotton.    The rags are pieces of cloth of varying sizes and irregular shapes, some very small, none large, and are the clippings or cuttings resulting from cutting to pattern cloth used in the manufacture of cheap clothing.    As imported, none of the pieces appears to be large enough for any fabric use.    After importation, they are shredded and used to stuff mattresses and as

---

[1] T. D. 41958.

journal-box packing, wiping, etc. The wool content of the rags is from 50 to 60 per centum in bulk and is of the greater value. The weight of the wool and cotton is about equal, the cotton being warp, and the wool, weft yarns used in weaving the cloth.

The undisputed evidence tends to show that it is commercially impracticable to segregate the wool and cotton in these rags so that each may be used in separate manufactures of these two materials.

The rags were classified by the collector as "woolen rags" under paragraph 1105 of the Tariff Act of 1922, which is as follows:

Top waste, slubbing waste, roving waste, and ring waste, 31 cents per pound; garnetted waste, 24 cents per pound; noils, carbonized, 24 cents per pound; noils, not carbonized, 19 cents per pound; thread or yarn waste, and all other wool wastes not specially provided for, 16 cents per pound; shoddy, and wool extract, 16 cents per pound; mungo, woolen rags, and flocks, 7½ cents per pound. Wastes of the hair of the Angora goat, Cashmere goat, alpaca, and other like animals shall be dutiable at the rates provided for similar types of wool wastes.

Importer claims classification under paragraph 1457 of the act as "waste, not specially provided for."

The Board of General Appraisers, now the United States Customs Court, sustained the collector's classification.

At the trial of the case the Government called no witnesses. Importer made some attempt to show a commercial designation that might exclude these rags from the term "woolen rags." The board, however, did not find such designation established and from a careful examination of the record we are entirely satisfied that as used in the wholesale trade, there was not sufficient competent evidence to establish either that the commercial meaning of the term was different from the common meaning or that the claimed commercial meaning was definite, uniform, and general and not partial, local, or personal.

Importers argue that the adjective "woolen" signifies composed of wool and, therefore, that these rags are not such because only composed in part of wool.

We think this contention can not be upheld. In common speech, "woolen," may mean made wholly or in part of wool. See New Standard Dictionary. As used in tariff statutes the word "woolen" as describing an article does not necessarily mean composed wholly of wool. When the terms "composed of," "made of," "manufactured of," etc., are used in tariff statutes with reference to the component material of an article, it is sufficient in most cases that the designated article be in chief value of such material. *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344.

In *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, it was held that when a tariff statute provides for duty upon an article of specified material, without declaring to what extent it must be com-

·posed thereof, it is sufficient if the specified material is the one of chief value or is the predominant one. See also *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372.

The earlier cases were reviewed and a like conclusion reached in *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257.·

Importer contends that, under the rule of *ejusdem generis*, these rags should be excluded from paragraph 1105, pointing out that that paragraph contains some 15 distinct provisions, 14 of which it is claimed cover raw materials for use in the woolen industry. On this assumption it is argued that as the rags here are not so used, they are not within the paragraph. But there is no proof that the use of such other articles is confined to the woolen industry. Undoubtedly, many thereof are waste produced in that industry, but it does not follow, nor does the paragraph indicate, that they are necessarily raw materials to be again or further used therein.

In *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886, we held that "flocks" consisting of wool ground into powder, used in making wall paper, were within paragraph 1105, and not excluded therefrom by either the rule of *ejusdem generis* or *noscitur a sociis*.

Undoubtedly, these rags are waste in a general sense, but as we find they are otherwise specially provided for, they are excluded from paragraph 1457.

On the whole record, we are of opinion that the judgment below ought to be, and it is, *affirmed*.