UNITED STATES *v.* I. MILLER & SONS (No. 3101) [1]

Unite d States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument October 2, 1928, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, described in the several invoices as "enameled Tombac-shoe-buckles," and consisting of enameled shoe ornaments of various shapes and designs, composed in part of base metal, was assessed for duty by the collector at 80 per centum ad valorem as "articles  *  *  *  designed to be worn on apparel or carried on or about or attached to the person," under paragraph 1428 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1428.  *  *  *  and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person,

---

[1] T. D. 43004.

such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders; collar, cuff, and dress buttons; combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral or amber, or with imitation precious stones or imitation pearls, 80 per centum ad valorem; * * *.

It was claimed in the protests that the merchandise was dutiable as "shoe buckles" under paragraph 346 of the Tariff Act of 1922, which reads as follows:

PAR. 346. Belt buckles, trouser buckles, and waistcoat buckles, shoe or slipper buckles, and parts thereof, made wholly or partly of iron, steel, or other base metal, valued at not more than 20 cents per hundred, 5 cents per hundred; valued at more than 20 and not more than 50 cents per hundred, 10 cents per hundred; valued at more than 50 cents per hundred, 15 cents per hundred; and in addition thereto, on all of the foregoing, 20 per centum ad valorem.

On the trial below Michael A. Miller, assistant secretary of the importing company, was the only witness. He testified that he had been familiar with articles of the kind involved for 25 years, during which period he had been engaged in the manufacture of shoes, and that they were used exclusively by his company as ornaments on shoes. We quote from his testimony:

Q. No; where have you made sales?—A. In retail stores at 450 Fifth Avenue, 562 Fifth Avenue, 1554 Broadway, Forty-second Street and Sixth Avenue, Russeks, Thirty-ninth Street and Fifth Avenue.

Q. You have made sales at wholesale? Have you made any of them to anyone, to places other than in New York City?—A. Chicago—at State and Monroe Streets, Chicago—*and to agents throughout the entire United States*, in the principal States.

Justice McCLELLAND. That is you have sold them?

The WITNESS. Yes, sir; sold them at wholesale.

Q. Now, going back to September, 1922, and before that time, what was the name of the article such as Exhibits 1, 2, and 3 in this country? * * *—A. These are known as shoe buckles.

By Justice McCLELLAND:

Q. You mean to say you have sold it under that name?—A. Yes, sir.

Q. When you go up in the retail stores what name do you buy them as?—A. We *buy them at the factory and sell them to the retail stores.*

Q. This name "shoe buckle" is used in selling to retail stores?—A. *Yes, sir; it is known commonly throughout the trade as a shoe buckle.*

By Mr. KLINGAMAN:

Q. In your retail experience what has been the name of the articles?—A. Shoe buckles.

Q. What do you do with them in your place of business when you use them as you have stated?—A. *We use them as an ornament on a shoe.*

Q. Is *that the only use you make of them?*—A. *Yes, sir.*

Q. Are you large shoe manufacturers?—A. Yes, sir.

Q. Is there base metal in these things?—A. Yes, sir.

Q. *Do shoe buckles, as that term is known in your business, necessarily have to fasten anything on a shoe?*—A. No, sir.

\* \* \* \* \* \* \*

Q. What is your connection with the actual manufacture of shoes in your place of business?—A. Assistant superintendent.

Q. *As such are you familiar with the output of your factory?*—A. *I am.*

Q. *Are your statements with reference to use based on that experience?*—A. Yes, sir.

Q. Now, I am uncertain whether you answered the other question. I will repeat it. Do shoe buckles as you know that term *in your trade* necessarily fasten anything on a shoe? \* \* \*—A. No. (Italics ours.)

On cross-examination he said:

Q. Mr. Miller, specifically, what are your duties with I. Miller & Sons?—A. Assistant superintendent.

Q. In the factory?—A. Yes, sir.

Q. How long have you held that position?—A. Eighteen or twenty years.

Q. And as superintendent of the factory do you do any selling?—A. Yes, sir.

Q. *You have a selling force, have you not?*—A. *Yes, sir.*

Q. *Apart from the factory?*—A. Yes, sir.

Q. Primarily, I. Miller & Sons manufacture shoes, do they not?—A. Yes, sir.

Q. The articles being litigated this morning are bought by I. Miller & Sons, are they not?—A. Yes, sir.

\* \* \* \* \* \* \*

Q. So far as your sales are concerned, you sell shoes, do you not?—A. Yes, sir.

Q. And you do not sell buckles in the wholesale trade, do you?—A. Yes, we do; *only as applied to our shoes.*

Q. When they are actually connected to your shoes?—A. No; they are sold separately.

Q. Who are the purchasers of this merchandise?—A. *Our own retail stores and our agents throughout the United States.*

Q. In what quantity do the retail stores buy these?—A. It is sold by the pair and by the dozen.

Q. *You do not mean to say that I. Miller & Sons sell at their own stores; do you?*—A. Yes, sir.

Q. *As a matter of bookkeeping?*—A. *Yes, sir.*

\* \* \* \* \* \* \*

Q. *The corporation of I. Miller & Sons, in addition to operating a factory, own and operate certain retail stores; isn't that so?*—A. *Yes, sir.*

Q. *When you speak of retail you speak of retail stores of the I. Miller corporation; is that it?*—A. *Yes, sir.*

Q. As superintendent of the factory, Mr. Miller, do you have charge of manufacturing of shoes?—A. Yes, sir.

Q. And that you state is your primary duty with I. Miller & Sons?—A. That is right.

\* \* \* \* \* \* \*

Q. Mr. Miller, I show you Exhibit 2, which is the triangular metal piece in three parts, and ask you if that in the position on the shoe performs any function of a buckle, as commonly understood?—A. It does.

Q. *And by that you mean simply that it is an ornament, that it has that ornamentation characteristic; is that it?*—A. *Yes, sir.*

Q. What you have stated with respect to Exhibit 2 is true, is it not, of Exhibits 3 and 1?—A. That is right. (Italics ours.)

The court below, in sustaining the protests, concluded its opinion with the following observations:

> Now, Mr. Miller's sworn testimony is that these are shoe buckles. It is not rebutted. Against that we have the mere presumption of correctness attaching to the action of the collector.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> We can not weigh the presumption attaching to the collector's action against the sworn testimony of Mr. Miller, which while not entirely satisfactory is much stronger than the unsupported presumption, and in our opinion justifies us in holding that these articles are shoe buckles made of base metal, and as such dutiable at 15 cents per hundred, plus 20 per centum ad valorem, under paragraph 346. We so hold.

From the judgment entered on these findings, the Government has appealed.

In the case of *United States* v. *Saks*, 13 Ct. Cust. Appls. 367, T. D. 41259, we held that "shoe ornaments" of the same general character as these here involved were not "shoe buckles" within the common meaning of that term.

It is claimed by counsel for appellee that the evidence in this case clearly shows that the involved articles are known in the trade and commerce of the United States as shoe buckles and for that reason the case at bar is distinguishable from the Saks case, *supra*. Because of the issue thus raised, we have quoted extensively from the testimony in the case.

The witness testified that he was engaged in the business of manufacturing shoes; that his company (the appellee) purchased the ornaments in question for the purpose of attaching them to shoes; that the shoes and the ornaments were sold at wholesale to "our own retail stores and our agents throughout the United States"; and that the sales to their retail stores were, in fact, "a matter of bookkeeping." There is no evidence that the witness had any knowledge of the trade understanding of the term "shoe buckles," except as it was used by himself and other representatives of his company in their dealings with one another. This is not proof of commercial designation. It does not establish that, in the trade and commerce of the United States, the ornaments in question were bought and sold and known definitely, uniformly, and *generally*, and not partially, locally, or *personally*, as shoe buckles. The rule has been stated and restated so many times that the citation of authorities is unnecessary.

What has been said of the testimony relating to commercial designation, may also be said of that relating to the common meaning of the term "shoe buckles." There is no suggestion in his testimony that the witness had any knowledge of the common meaning of the term, except as it was used by the representatives of his company.

In the *Saks* case, *supra*, we quoted dictionary definitions of the terms "buckles" and "shoe buckles" in extenso, and, after careful consideration of the subject, held that the common meaning of the term "shoe buckles" excluded shoe ornaments of the kind and character of those here involved. There is nothing in this record to warrant a contrary holding in this case.

It will be observed that the court below did not indicate whether it based its decision upon the common or the commercial meaning of the term. But whatever its intention was in this regard, we are unable to agree to the conclusion reached.

It was alternatively claimed in the protests that the articles were dutiable as "clasps" under paragraph 348. However, no such contention is made in this court. On the contrary, it is conceded by counsel for appellee that they are not "clasps." We quote from his brief:

The only thing left for paragraph 346 to cover is shoe buckles which are not clasps, the very articles at bar.

For the reasons stated, the judgment will be *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.