UNITED STATES *v.* H. ZUCKERMAN SHOE MFG. CO. ET AL. (No. 3293)[1]

[1] T. D. 44425.

United States Court of Customs and Patent Appeals, November 10,
1930

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument November 11, 1930, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the classification of merchandise which consists of curved articles composed of white metal studded with rhinestones. On the back of these articles is a metal bar having pierced therein two small holes, the purpose of this bar being to attach the article to other materials with which it may be used. The merchandise, as appears by the record, is referred to variously as shoe buckles, ornaments, shoe ornaments, hat buckles, etc.

The merchandise was assessed under the third provision of paragraph 1428, Tariff Act of 1922, at 80 per centum ad valorem, as metal articles valued above 20 cents per dozen pieces, "designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, * * * and like articles."

The importers protested this classification, making several claims, only one of which is urged here. The importers claim that the merchandise is a shoe buckle, and is dutiable at the appropriate rate under paragraph 346 of the Tariff Act of 1922. The lower court so found and the Government appeals from the judgment entered in accordance with such finding.

The pertinent provisions of paragraph 1428, Tariff Act of 1922, read as follows:

* * * and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, * * * millinery, military, and hair ornaments, * * * and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral or amber, or with imitation precious stones or imitation pearls, 80 per centum ad valorem; * * *

Paragraph 346 of the same act reads as follows:

PAR. 346. Belt buckles, trouser buckles, and waistcoat buckles, shoe or slipper buckles, and parts thereof, made wholly or partly of iron, steel, or other base

metal, valued at not more than 20 cents per hundred, 5 cents per hundred; valued at more than 20 and not more than 50 cents per hundred, 10 cents per hundred; valued at more than 50 cents per hundred, 15 cents per hundred; and in addition thereto, on all of the foregoing, 20 per centum ad valorem.

In the opinion of the lower court we find the following:

Exhibit 1 is a small curved article composed of white metal studded with rhinestones. It has a bar across the back by which it may be attached to a shoe. It is common knowledge that such and similar articles are used to ornament ladies' shoes. We think all the witnesses' testimony indicates that these articles, although without a prong or means of fastening a strap, are commonly known as buckles. In fact, our common understanding of these articles as shoe buckles is borne out by the following dictionary definitions:

A buckle for fastening the shoe by a strap across the instep, *or one worn on the shoe for ornament.* (Funk & Wagnalls' New Standard Dictionary. 1925.)
A buckle for fastening the shoe on the foot * * * *most contemporary shoe buckles are sewed on merely for ornament.* (Century Dictionary and Cyclopedia.)
An ornamental device resembling a buckle as above, used chiefly by women to adorn the hair, waistband, *shoes,* etc. (Webster's New International Dictionary.)

The testimony in this case and the foregoing definitions confirm us in our opinion that merchandise like Exhibit 1 is *commonly* known as shoe buckles.

We think the testimony of Miss Ruhl, Mr. Roedelheimer, and Mr. Alexander indicates that merchandise like Exhibit 1 is known commercially as shoe buckles, also at times as shoe ornaments. Mr. Chusmir's testimony also indicates this fact.

The weight of the testimony demonstrates that the chief use of these articles is as buckles on ladies' shoes. The very nature and character of the sample, Exhibit 1, sustain this fact. True, it ornaments the shoe. The brightness of the article shows it to advantage on the shoe. The fact that it is ornamental does not in any way, under the testimony, deter it from being used on shoes. The case of *United States* v. *Miller,* 16 Ct. Cust. Appls. 374, T. D. 43094, does not militate against this conclusion. In the *Miller* case but a single witness testified to the use of the shoe ornaments there involved. In the case at bar seven witnesses testified, and all declare that Exhibit 1 is used on shoes, notwithstanding it may have a minor use as slides or ornaments on hats or dresses. We arrive at this conclusion on the fact and not as a matter of law. The facts are complete that these articles are shoe buckles and so known in the trade. Their ornamental character is not the controlling factor. It is the use that dominates.

Appellees' counsel in his brief, and upon oral argument, concedes that the finding of the court as to the common meaning of the term "shoe buckles" is directly contrary to what this court has heretofore held in the cases of *United States* v. *Saks & Co.,* 13 Ct. Cust. Appls. 367, T. D. 41259; *United States* v. *Miller,* 16 Ct. Cust. Appls. 374, T. D. 43094; and *United States* v. *Alex. Murphy & Co.,* 16 Ct. Cust. Appls. 409, T. D. 43132, but he insists that in the case at bar commercial designation was proved upon the trial and found by the court, and therefore its error as to the common meaning of "shoe buckles" is immaterial.

It is hardly accurate to say that the lower court found commercial designation of the merchandise in question, as that term is used in tariff matters, for it clearly appears that it did not find that the commercial meaning of the term "shoe buckles" differed from its common meaning, but that they were both commonly and commercially known as "shoe buckles." However, if commercial designation of the merchandise was proved upon the trial, by a preponderance of the evidence the judgment below should be affirmed. Therefore, the only question before us is whether there is sufficient evidence of commercial designation to sustain the judgment.

It clearly appears that merchandise of the character of that which is here involved is used in the shoe trade, the millinery trade, and the dress trade. The lower court found that the chief use was in the shoe trade, and was evidently of the opinion that the commercial understanding of the shoe trade that this merchandise was bought and sold in that trade as shoe buckles was sufficient for the purpose of commercial designation.

We do not so understand the rule. In order to invoke the rule of commercial designation, it must be shown that, in the *trade and commerce of the United States*, the merchandise in question was bought and sold and known definitely, uniformly and generally, and not partially, locally, or personally, as shoe buckles. *United States* v. *Miller, supra.*

The record shows that the importers' witness, Zuckerman, was engaged in the shoe business, and his experience and knowledge with reference to the buying and selling of merchandise like that here involved was limited to the shoe trade. His testimony was that in that trade the merchandise was always bought and sold as a shoe buckle. The same is true of the importers' witness Kahn.

Importers' witness Roedelheimer was engaged in the shoe buckle, jewelry, and novelty business. While he testified that wholesale buyers from all over the country knew the merchandise in question as shoe buckles, it also appears that all of the customers to whom he sold similar merchandise were engaged in the shoe business, and he testified that he never had sold such merchandise to the millinery or dress trade.

Joseph Powlowitz, a Government witness, testified that he was in the business of rhinestone ornaments and that he sold merchandise like that here involved to the millinery, the dress trade, and shoe stores; that they were sold under the name of rhinestone ornaments. In response to a question by Justice McClelland, he testified that his combined sales to the millinery and dressmaking trades were greater than the sales to the shoe industry.

George Alexander, a witness for the Government, testified that he was a manufacturer of rhinestones and sold merchandise similar to

that here in question; that he sold such merchandise to the shoe trade, the dress trade, the jewelry trade, and the millinery trade. He further testified as follows:

Q. Was Exhibit 1 in 1922 known under any name in the wholesale trade?— A. It was known as a shoe buckle, as an ornament. They would use it on a shoe, on a hat, or a dress. If it was on a hat you would call it a hat ornament; on the shoe it was a shoe ornament.

He further testified that at the present time he sold about 80 per centum of his product to the shoe trade, and the balance to the hat and dress trade.

The testimony of the other Government witnesses was of the same import as that of the witnesses named.

From this testimony we must conclude that the hat and millinery trades did use merchandise like that here involved to a substantial extent. We think the testimony shows that the chief use was in the shoe trade, as the lower court held, and that in that trade the merchandise was definitely, uniformly, and generally known as shoe buckles; but that is not enough to bring the merchandise within the rule of commercial designation. The millinery trade and the dress trade are a part of the trade and commerce of the United States, and where those trades use the merchandise in question in a substantial though minor quantity, as the testimony shows they do, it must be shown by a preponderance of the evidence that the merchandise is definitely, uniformly, and generally known as shoe buckles in those trades as well as the shoe trade. There is no such testimony in the record, but on the contrary the testimony affirmatively shows that merchandise of the character here involved was sold to the millinery and dress trades under the name of rhinestone ornaments, and also to the hat trade as hat ornaments.

Proof of commercial designation having failed, we hold that the collector properly classified the merchandise according to its common meaning.

The judgment of the United States Customs Court is *reversed*.