CURTIS & VON BERNUTH MFG. Co. *v.* UNITED STATES (No. 3837)[1]

United States Court of Customs and Patent Appeals, March 25, 1935

*Brown & Carter (Allan R. Brown, Fred J. Carter,* and *E. F. Blauvelt* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General *(Ralph Folks* and *Thomas J. Canty,* special attorneys, of counsel), for the United States.

[Oral argument December 10, 1934, by Mr. Blauvelt and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRET, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain "steamer rugs" and "automobile robes" in

[1] T. D. 47633.

chief value of wool, not exceeding three yards in length, some valued at not more than $1.00 per pound and some at more than $1.00 but not more than $1.50 per pound, dutiable under paragraph 1111 of the Tariff Act of 1930, as assessed by the collector at the port of New York.

Appellant contends that the imported articles are not dutiable under paragraph 1111, *supra*, but, on the contrary, are dutiable as manufactures of wool, not specially provided for, under paragraph 1120 of that act.

The paragraphs in question read as follows:

PAR. 1111. Blankets, and similar articles (including carriage and automobile robes and steamer rugs), made of blanketing, as units or in the piece, finished or unfinished, wholly or in chief value of wool, not exceeding three yards in length, valued at not more than $1 per pound, 30 cents per pound and 36 per centum ad valorem; valued at more than $1 but not more than $1.50 per pound, 33 cents per pound and 37½ per centum ad valorem; valued at more than $1.50 per pound, 40 cents per pound and 40 per centum ad valorem: *Provided*, That on all the foregoing, exceeding three yards in length, the same duty shall be paid as on woven fabrics of wool weighing more than four ounces per square yard.

PAR. 1120. All manufactures, wholly or in chief value of wool, not specially provided for, 50 per centum ad valorem.

On the trial below it was established that the involved articles were manufactured directly from yarns; that they were woven in lengths of about 50 to 60 yards; that the loom on which they were woven had an attachment, which, after the cloth had been woven to a length of seventy-two inches, automatically omitted the weft threads for a fixed distance of about eight to ten inches; that when the weaving process was finished, as stated by counsel for appellant in their brief, "the result was a series of individual steamer rugs [the automobile robes were produced in the same manner] separated from each other every seventy-two inches by eight or ten inches of unfilled warp threads"; that after the weaving process, the articles were removed from the loom, "washed, teazled, fulled, and finished," and the individual articles separated from each other by cutting through the middle of the space from which the weft threads had been omitted; that, thereafter, the unfilled warp threads at the ends of the individual articles were rolled together and made into fringes; that, with the exception of the attachment, which automatically omitted the filling threads every seventy-two inches, and the possible exception of width, the machinery, including the weaving process, by which the involved articles were made was precisely the same as is used in the manufacture of blanketing; and that the quality of the finished product depends upon the grade of wool used.

Upon this record the trial court, in an opinion by Judge McClelland, Brown, J., dissenting, held that the involved articles were dutiable as assessed by the collector, and overruled the protest.

The trial court apparently based its decision upon the theory that the involved articles were made of "blanketing," because their manufacture was similar to the manufacture of that material, and, in so doing, relied, to some extent at least, upon the report of the Tariff Commission in the Summary of Tariff Information, 1921, relative to H. R. 7456 (which later became the Tariff Act of 1922), prepared for the use of the Committee on Finance of the Senate.

We quote from the Summary of Tariff Information, pp. 980 and 982, as did the trial court:

* * * At the same time the paragraph should be made to include not only bed blankets and horse blankets (to which varieties the courts have limited the term "blankets"), but also carriage and automobile robes and other articles when made in the same manner as blanketing. (See "Suggested changes," p. 982.)

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

*Suggested changes.*—Paragraph 1112 should be so worded as to distinguish between the ordinary and the fancy blankets without the vitiating clause which reads "not advanced beyond weaving by any process of finishing." At the same time it should be made to include all carriage and automobile robes, steamer rugs, and other articles, *when similar to blankets in construction and method of manufacture.* It is true that the articles named are generally of better quality than the ordinary grades of blankets, but this is likewise true of the fancy blankets. (Italics ours, except the words "Suggested changes.")

The trial court also called attention to the fact that the report of the Tariff Commission included a suggestion as to the language to be incorporated into the paragraph there under consideration. The suggested language, which reads, in part, as follows, was incorporated into paragraph 1111 of the act of 1922: "Blankets and similar articles, including carriage and automobile robes and steamer rugs, made of blanketing." Immediately following the suggested provisions, the Tariff Commission stated that "The foregoing classification expands" the paragraph in question "so as to include fancy blankets and articles similar to blankets in construction and method of manufacture."

The Tariff Commission was undoubtedly right. The language suggested by it, and accepted by the Congress, did extend the operation of the paragraph to include finished blankets, as well as other articles; whereas, the paragraph, as it passed the House of Representatives, was limited to blankets "not advanced beyond weaving by any process of finishing."

In its opinion, the trial court stated that—

From the foregoing it is apparent that it was the intent of Congress to place for duty purposes under paragraph 1111 carriage and automobile robes, steamer rugs, and other articles when similar to blankets in construction and method of manufacture. As hereinbefore detailed, it is obvious from the testimony that the methods of manufacturing blankets and the automobile robes here in issue are very similar and that the resultant products are similar in construction and finish save that the automobile robes require the use of an attachment whereby

the weft threads are omitted at certain intervals during the weaving in order to provide for the fringes which appear on each of the three exhibits * * *,

and, accordingly, held that the involved automobile robes and steamer rugs were dutiable under paragraph 1111, *supra.*

The difficulty which confronts us in arriving at the conclusion reached by the trial court is that the Tariff Commission did not suggest the inclusion, nor did the Congress provide, in paragraph 1111 of the Tariff Act of 1922 for articles similar to blankets, including automobile robes and steamer rugs, composed wholly or in chief value of wool, but the Congress expressly limited the operation of the paragraph, so far as such articles are concerned, to such as were made of blanketing. The same limitation is contained in paragraph 1111 of the Tariff Act of 1930.

It is contended by counsel for appellant that the involved articles are not made from blanketing; that blanketing is a fabric; that, as defined by the lexicographers, it is a "Cloth for blankets", or a "cloth of which blankets are made"; and that as the involved articles were not made from any fabric, they were not made from blanketing, and are, therefore, not included within the provisions of paragraph 1111, *supra.*

It may be observed that in paragraph 1111 of the Tariff Act of 1930, the one now under consideration, the Congress added the language "as units or in the piece, finished or unfinished." That language was first inserted in the paragraph when H. R. 2667 (which later became the Tariff Act of 1930) was before the Committee on Finance of the Senate, and was accepted by the Senate as Senate amendment No. 642.

We quote from the Conference Report No. 1892, page 83:

Senate amendment No. 642 makes certain that the duties specified in the paragraph will be applicable to such articles [that is, blankets, and other articles, made of blanketing, provided for in the paragraph] as units or in the piece, finished or unfinished.

The exact purpose of the amendment need not here be determined, as it is obvious that it has no particular application to the issues here involved.

"Blanketing", or "blanket cloth" as it is referred to by the Tariff Commission in the Summary of Tariff Information, 1921, p. 980, is "Cloth for blankets", Webster's New International Dictionary; "Course fabrics of which blankets are made * * *", Funk & Wagnalls New Standard Dictionary.

The words "made of", in a tariff sense, generally mean made in chief value of a designated material, although the context of a statute may require that they be interpreted to mean made substantially wholly of such material. And the words "made of", "composed of", "manufactures of", and "manufactured of" are frequently used

interchangeably in tariff statutes. See *Steinhardt & Bro.* v. *United States,* 8 Ct. Cust. Appls. 372, T. D. 37629; *United States* v. *Linen Thread Co.,* 13 Ct. Cust. Appls. 359, T. D. 41257; *Louisville Bedding Co.* v. *United States,* 14 Ct. Cust. Appls. 328, T. D. 41958.

We think it is clear from what has been said that the involved articles were *not made of blanketing.* If they had been imported in running lengths each individual article being fixed with certainty, we dare say that no one would suggest that they were not dutiable as individual articles. See *United States* v. *M. H. Rogers, Inc.,* 18 C. C. P. A. (Customs) 271, T. D. 44448.

We find nothing in the legislative history to indicate that the Congress intended that articles such as those here involved, which were not made of blanketing, should be classified under paragraph 1111, *supra.* Why the Congress limited the provisions of that paragraph, for articles similar to blankets "(including carriage and automobile robes and steamer rugs)", to such as were made of blanketing, as it obviously did, is a matter with which this court is not concerned. See *United States* v. *Macy & Co.,* 7 Ct. Cust. Appls. 8, T. D. 36256; *Western Blind & Screen Co.* v. *United States,* 9 Ct. Cust. Appls. 68, T. D. 39942; *United States* v. *Dodge,* 13 Ct. Cust. Appls. 222, T. D. 41176; *Angel & Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 19, T. D. 42132.

We do not wish to be understood as expressing any opinion as to whether the blankets provided for in paragraph 1111, *supra,* are limited to such as are made of blanketing.

For the reasons stated, we are of opinion that the protest should have been sustained. Accordingly, the judgment of the trial court is *reversed,* and the cause *remanded* for proceedings consistent with the views herein expressed.