Before the First Division, April 11, 1939

**No. 41031.**—Protest 938985–G of P. Silverman & Son (Portland, Maine).

McCLELLAND, Presiding Judge: The merchandise against the classification and assessment of duties on which this protest was filed is described on the consular invoice as "old woolen dryer felts." The appraiser returned it as woolen rags and the collector assessed it with duty at the rate of 18 cents per pound under the provision therefor in paragraph 1105 of the Tariff Act of 1930. As originally filed

the protest contained a claim for duty at the rate of 10 percent ad valorem under the provision in paragraph 1555 of the same act for "waste, not specially provided for," and an added claim for duty at the rate of 20 percent ad valorem under the provision in paragraph 1558 for nonenumerated manufactured articles. Subsequently, and before the protest was called for trial, the following amendments to the protest were made upon motion on consent of Government counsel: One for duty at the rate of 20 percent ad valorem under paragraph 1514, which provides for abrasives, and another for duty at the rate of 50 percent ad valorem under paragraph 1120 as manufactures wholly or in chief value of wool, not specially provided for.

It is conceded that the merchandise is in chief value of wool and consists of worn-out dryer felts known as Palmer or sanforizing blankets. As imported it was in pieces varying from 3 feet to 25 feet in width, and from 3 feet to 35 feet in length. It appears from the record that when these articles were new their chief use was in textile finishing operations and that as the result of such use the pieces in issue became burned by heat and friction and thus became unfit for the use above described. As imported its only use, so far as the record shows, is for wiping and abrasive purposes in the steel and optical glass industries.

It is unquestionable that in the condition in which this merchandise was imported it was not suitable for remanufacture into wool fabric. Neither, in our view, can it be said to consist of wool rags, since manifestly the pieces are too large to be classed as rags. Funk & Wagnall's New Standard Dictionary defines "rag" as follows:

A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as linen *rags*.

It is therefore apparent that the collector's classification of the merchandise as wool rags was erroneous. The original claim in the protest for duty at 10 percent as waste, not specially provided for, under paragraph 1555 is untenable for the reasons hereinafter stated, as is also the claim under the catch-all provision in paragraph 1558. The first claim made by amendment to the protest is for duty at the rate of 20 percent ad valorem under paragraph 1514, the pertinent portion of which reads:

\* \* \* emery wheels, emery files, and manufactures of which emery, corundum, garnet or artificial abrasive is the component material of chief value, not specially provided for; and all papers, cloths, and combinations of paper and cloth, wholly or partly coated with artificial or natural abrasives, or with a combination of natural and artificial abrasives \* \* \*.

It is evident that the merchandise in issue, being made entirely of wool, and still containing nothing else, is not *ejusdem generis* with any of the articles described in the above quotation from paragraph 1514, and therefore that claim must be overruled.

The other claim made by amendment to the protest is for duty at the rate of 50 percent ad valorem as manufactures of wool, not specially provided for. That the merchandise is no longer a manufacture of wool within the meaning of paragraph 1120 is too apparent to require discussion, and that claim must therefore be overruled as being without merit.

The record clearly establishes that the merchandise in issue is useless for the purpose for which it was originally made and is fit only for use, after manipulation, for another purpose, i. e., for wiping and abrasive purposes in the steel and optical glass industries. It therefore falls within the meaning of the term "waste" as it has been defined and limited by prior decisions of this and other courts. See *Cia Algodonera* v. *United States*, 23 C. C. P. A. 42, T. D. 47686, and cases therein cited.

The claim made in the protest for duty at the rate of 10 percent ad valorem under paragraph 1555, *supra*, as waste, not specially provided for, would therefore undoubtedly have merit if there were not in the dutiable paragraphs of the tariff act a more specific designation for the merchandise. It appears, however, that in paragraph 1105, *supra*, there is a provision for "all other wool wastes, not specially provided for," at the rate of 24 cents per pound.

Counsel for the plaintiffs argue that the foregoing provision in paragraph 1105 is limited by the rule of *ejusdem generis* to wool waste and wool waste materials wholly or chiefly used in the woolen industry. In the case of *Louisville Bedding Co.* v. *United States*, 14 Ct. Cust. Appls. 328, T. D. 41958, the Court of Customs and Patent Appeals squarely held that the provisions of paragraph 1105 of the Tariff Act of 1922, the predecessor of paragraph 1105 of the present act and couched in substantially the same language, were not limited under either the rule of *ejusdem generis* or *noscitur a sociis* to materials used in the woolen industry.

· From a reading of the provisions of paragraph 1105 (a), which are as follows:

PAR. 1105. (a) Top waste, slubbing waste, roving waste, and ring waste, 37 cents per pound; garnetted waste, 26 cents per pound; noils, carbonized, 30 cents per pound; noils, not carbonized, 23 cents per pound; thread or yarn waste, 25 cents per pound; card or burr waste, carbonized, 23 cents per pound; not carbonized, 16 cents per pound; all other wool wastes not specially provided for, 24 cents per pound; shoddy, and wool extract, 24 cents per pound; mungo, 10 cents per pound; wool rags, 18 cents per pound; flocks, 8 cents per pound.

it would appear to have been the unmistakable intent of Congress to cover thereby all wool wastes if not *eo nomine* provided for in some other paragraph. This provision, we are convinced, is more specific than the blanket provision for waste in paragraph 1555, *supra*, or the catch-all provision in paragraph 1558, *supra*.

Thus it appears that while the collector's assessment was erroneous, none of the claims made in the protest has been sustained, and the protest must therefore be overruled without affirming the action of the collector. Judgment will issue accordingly.

### DISSENTING OPINION

BROWN, Judge. This suit against the United States was brought at Portland, Maine, and there tried, to recover customs duties claimed to have been illegally exacted on certain imported merchandise called dryer's felt from France via Montreal, Canada.

The collector of customs took duty at 18 cents per pound as "wool rags" under paragraph 1105 of the wool schedule of the Tariff Act of 1930 reading as follows:

PAR. 1105. (a) Top waste, slubbing waste, roving waste, and ring waste, 37 cents per pound; garnetted waste, 26 cents per pound; noils, carbonized, 30 cents per pound; noils, not carbonized, 23 cents per pound; thread or yarn waste, 25 cents per pound; card or burr waste, carbonized, 23 cents per pound; not carbonized, 16 cents per pound; all other wool wastes not specially provided for, 24 cents per pound; shoddy, and wool extract, 24 cents per pound; mungo, 10 cents per pound; wool rags, 18 cents per pound; flocks, 8 cents per pound.

(b) Wastes of the hair of the Angora goat, Cashmere goat, alpaca, and other like animals, shall be dutiable at the rates provided for similar types of wool wastes.

Here it should be noted that the wool schedule, of which paragraph 1105 is a part, establishes high protective rates for the American wool industry, both manufacturers of woolen fabrics and growers of wool itself. After placing high rates upon wool itself in various conditions and of various kinds, the wool schedule next taxes, also at high rates, the various wool wastes and similar articles which, as a matter of common knowledge, go into the manufacture of woolen fabrics, in said paragraph 1105, including "wool rags."

. The plaintiffs' principal claim is for classification of the merchandise under paragraph 1555 reading as follows: "PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem."

There are also alternative claims in the protest and amended protest under the nonenumerated paragraph at 10 percent as unmanufactured or 20 percent as manufactured; at 20 percent under paragraph 1514 as papers and cloth or combinations thereof, coated with abrasives; and at 50 percent as a manufacture of wool.

As we shall hereafter see that the issue turns upon the question whether Congress intended to include this article in the nature of a waste under the wool waste paragraph, as wool rags, or the general waste paragraph 1555, these alternative claims may be put to one side.

The merchandise is admittedly of chief value of wool. The merchandise was imported in pieces varying from 3 feet to 25 feet in width, and from 3 feet to 35 feet in length (R. 5). Those sizes, on their face, would be too large to be reasonably designated as rags.

The importation consists of dryer's felt called Palmer or sanforizing blankets in a worn-out condition. When new these are used chiefly in textile finishing operations and are discarded when they become so worn and burnt by heat and friction as to render them unfit for their original purpose. (R. 14 and Exhibit A in the form as unused comparing it with Exhibits 1 and 2, the imported merchandise, and R. 35.)

It is used for wiping and abrasive purposes in the steel industry (R. 6) and in the optical glass industry for its wiping, abrasive, and polishing qualities.

The evidence is overwhelming and stated by experienced, qualified witnesses from the wool waste and shoddy trade, who testified that it is not and cannot be used for remanufacture into wool garments as wool rags as the other articles enumerated in paragraph 1105 are used.

As witness O'Roak testified (R. 35):

We don't consider them rags because the fibers are so short and they have so much foreign matter in them and they have had so much heat applied to them that they are worthless as rags. They are used until they are no longer heat resisting. The little spikes have all been burned off, so they have no spiral quality left.

As shown by all the testimony and the samples in evidence the article is undeniably waste and we so find as a fact herein.

The merchandise answers the legal definition of "waste" as stated by the Supreme Court in Patton v. United States, 159 U. S. 500, 503, and in the language of our court of appeals in Harley Co. v. United States, 14 Ct. Cust. Appls. 112, T. D. 41644, where it is said:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else.

The reasoning in Louisville Bedding Co. v. United States, 14 Ct. Cust. Appls. 328, T. D. 41958, is unsound as applied to the situation here before us. In that case it was not shown, as here, that the use of the other articles mentioned in paragraph 1105 is practically confined to the wool industry for making cloth.

In the light of this record the conclusion there arrived at should be re-examined or re-applied.

Also in that case the pieces of cloth there involved were too small to be made part of a garment, none was large, as here. They were actually rags. The main contention there made by the importer was that they could not be wool rags because in part of cotton, which contention was naturally overruled.

The claim of ejusdem generis failed there because there was no proof, as here, of the use for manufacture into cloth of the articles named in paragraph 1105.

For the above reasons we should sustain the claim in the protest for classification of this merchandise at 10 percent ad valorem under paragraph 1555 as waste not specially provided for.

Judgment should issue accordingly, directing the collector to refund the difference between that rate and the rate of duty of 18 cents per pound which he collected.

The above upon a subject regularly assigned to the writer was prepared as for a division opinion. Being rejected by the majority, it is now respectfully filed as a dissent.