(C. D. 1754)

ASTRA TRADING CORP. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided January 25, 1956)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: These protests relate to merchandise which is described on the invoices as "expansion watch bands" or "expansion wrist watch bands." They were assessed with duty at the rate of 65 per centum ad valorem under the provisions of paragraph 1527 (c) (2) of the Tariff Act of 1930, as modified by the Presidential proclamation carrying out the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by the Presidential proclamation reported in T. D. 51898. The language of the provision of the Tariff Act of 1930, under which duty was assessed, reads as follows:

PAR. 1527. * * *

\* \* \* \* \* \* \*

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

\* \* \* \* \* \* \*

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls * * *.

It is the plaintiff's claim that the merchandise involved is not within the purview of the above language, and that, in view of the fact that it is not elsewhere in the tariff act more specifically provided for, it is properly dutiable at the rate of 22½ per centum ad valorem under the provision in paragraph 397 of the said act, as modified by the said Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for—

Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer * * *. [Language from Tariff Act of 1930.]

At the outset of the trial, the following matters were agreed upon by counsel for the parties:

(1)   That the articles involved are composed of either steel or brass, or a combination of both;

(2)   That they are of spring link construction, permitting them to be expanded and passed over the hand and then to contract to fit snugly on the wrist, when used to hold a watch in place;

(3)   That they are designed for and are used to be attached to a wristwatch to hold the watch in place on the wrist;

(4)   That, as imported, they are not plated with platinum, gold, or silver, or colored with gold lacquer;

(5)   That they are valued at over 20 cents per dozen pieces; and

(6)   That the question of commercial designation has no application in the present case.

During the course of the trial, counsel for the plaintiff abandoned all claims as to such of the merchandise as consisted of "items that are stainless steel top shell as well as back."

The articles remaining before us for consideration respond to the following description: They are a common and familiar type of expansion watch band or bracelet.[1]  A representative sample of the merchandise before us shows that it has spring link construction so designed that, after having been attached to a wristwatch, it will expand to slip over the hand of the wearer and then contract to hold the watch firmly in place on the wrist.   Each link has a back, the part closest to the skin when the article is worn, and a top, the part which is uppermost and exposed when the article is worn, together with suitable fittings or fastenings at the ends to enable the article to be secured to the watch.

The backs of the articles in issue are in some cases of brass and in others of steel.   The tops of all of the articles in issue are brass, in some cases chromium plated, but, in the main, are raw or unplated or uncovered brass.   It is quite obviously a cheaply constructed article.   The evidence indicates that the raw brass articles are never sold or used in their imported condition but, after importation, are subjected to a gold-plating process, which imparts a gold color to them.

After plating, some are mounted on display cards and sold to chain department stores of the so-called "Five-and-Ten Cent Store" variety, while others are sold to drug jobbers, sundry jobbers, and tobacco jobbers for corresponding retail outlets.   A portion goes to assemblers of inexpensive watches, and the clear preponderance of the evidence

[1] Plaintiff's counsel maintains the position that the articles are not within the common meaning of the term "watch bracelets."   No effort was made in the case before us, however, to develop either facts or argument in support of that position.   The term "watch bracelets," as will be seen *infra*, has been in the past broadly applied with reference to articles used to hold a wristwatch to the wearer's wrist, and there is evidence in the case at bar that it is used interchangeably with the term "watch bands" to describe merchandise such as that here involved.

establishes that these articles are not sold to the trade which handles the more expensive type of watch band or bracelet; that they are designed for and are chiefly used with inexpensive watches; and that they retail for about $1 each.

It is the plaintiff's contention that a consideration of the physical characteristics, use, relative value, and marketing situation of the articles at bar, together with a consideration of the judicial and legislative history of the paragraph under which they were assessed, demonstrates that they do not meet the test of classification under that paragraph, and that the facts agreed upon and the evidence offered at the trial establish that they are properly classifiable under the catchall metal articles provision claimed in the protests.

It is the defendant's contention that the provision in paragraph 1527 (c) (2), under which the merchandise was assessed, includes all watch bracelets and like articles, and that any consideration of quality, value, use, or marketing situation is immaterial, except insofar as the value of the merchandise meets the standard set forth in that paragraph, viz, that it be valued at over 20 cents per dozen pieces.

Merchandise such as that here involved was before us in the case of *Dale Products Corp. et al.* v. *United States*, 31 Cust. Ct. 170, C. D. 1565, and, in that case, both the classification of the merchandise and the protest claim were the same as here. The issue in that case, however, was approached and treated along lines of the common and commercial meaning of the term "watch bracelet," which the plaintiffs in that case contended excluded merchandise such as that at bar. The decision in that case, adverse to the claim of the plaintiffs, was not reviewed by our appellate court. The plaintiff herein does not rely upon the concept of the issue that was treated in the *Dale Products Corp. et al.* case, but presses other elements, principally legal, arising in connection with the construction of paragraph 1527 (c) (2) and its antecedents. The different problems presented in this case impel us to consider the decision in the *Dale Products Corp. et al.* case not to be controlling of our action herein.

The provision under which the merchandise at bar was assessed for duty consists of a generic descriptive term, namely:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person,

followed by 25 named exemplars:

* * * such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets,

and concluded by a general, catchall term,

* * * and like articles * * *.

In an unbroken line of decisions for nearly 40 years, our appellate tribunal has interpreted the language of the generic descriptive term and the named exemplars above to be limited to incidental articles of mere personal comfort, convenience, or adornment.

*Gallagher & Ascher* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343, was a case which arose under the predecessor provision to the above, contained in paragraph 356 of the Tariff Act of 1913, and which contained the identical generic descriptive term, and 23 of the 25 named exemplars, the omissions being "cigar lighters" and "watch bracelets." That provision was held to include so-called "prorepel" pencils, composed of metal and designed to be carried in the purse. The court ruled that the named exemplars in the paragraph had in common the characteristic of being "incidental articles of mere personal comfort, convenience, or adornment," and that the generic descriptive provision for articles, designed to be worn on apparel or carried on or about or attached to the person, must be construed in the same light.

In *United States* v. *Sussfeld, Lorsch & Co.*, 7 Ct. Cust. Appls. 126, T. D. 36454, pedometers, carried on the person to measure the distance walked by their users, were held not to be dutiable under the above provision in paragraph 356 of the Tariff Act of 1913, on evidence that they were used by "practical people for utilitarian purposes in measuring the distance walked." The court ruled that such articles were "vocational instruments" and not "articles of mere personal comfort, convenience, or adornment," and so were dutiable as manufactures of metal, rather than under paragraph 356, as classified.

The above rule was applied to identical language in paragraph 1428 of the Tariff Act of 1922 in *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, holding that saber chains, designed for use by Army officers, were not dutiable under said paragraph 1428, although chains were named therein. The court emphasized that the chains in question were required in certain forms of military dress and, therefore, could not be regarded as incidental articles of mere personal comfort, convenience, or adornment.

In *Weyenberg Shoe Mfg. Co.* v. *United States*, 24 Cust. Ct. 196, C. D. 1231, this court sustained classification under paragraph 1527 (c) (2) of the present act of certain metal buckles, designed to be used with a strap as a fastening of a dress type of oxford shoes, manufactured and sold for both military and civilian use. The opinion stated that the buckles in controversy were utilitarian in nature but that, nevertheless, Congress evidently intended that they should be included within paragraph 1527 (c) (2), *supra*.

On appeal, that judgment was reversed, *Weyenberg Shoe Mfg. Co.* v. *United States*, 38 C. C. P. A. (Customs) 122, C. A. D. 448. The appellate tribunal cited and quoted with approval its earlier decisions

in the *Gallagher & Ascher* case and the *Horstmann Co.* case, *supra*, and specifically relied upon the latter authority. It held that the buckles before it were articles of necessity, as opposed to incidental articles of mere personal comfort, convenience, or adornment, and so they were not within the paragraph.

These cases confirm that the given exemplars in paragraph 1527 (c) (2) are not intended as unlimited *eo nomine* designations but to illustrate the class of incidental articles intended to be embraced by the provision. The buckles in the *Weyenberg* case were excluded from paragraph 1527 (c) (2), because they were not incidental articles either in themselves or in connection with the shoes on which they were to be attached. Compare, in this connection, the decision of our appellate court in the case of *United States* v. *I. Miller & Sons*, 16 Ct. Cust. Appls. 374, T. D. 43094, wherein ornamental buckles used on shoes were held to be within the purview of the provision.

Repeatedly in the construction of paragraph 1527 (c) (2) and its antecedents, both this court and our appellate tribunal have described the provision as one providing for *incidental* articles of *mere* personal comfort, convenience, or adornment. The underscored terms are defined in Webster's New International Dictionary, second edition, 1945, as follows:

mere * * * **4.** Only this, and nothing else; nothing more than; such, and no more, simple; as, a *mere* child; a *mere* form.

**incidental** * * * **1.** Happening as a chance or undesigned feature of something else; casual; hence, not of prime concern; subordinate; as, an *incidental* expense.

The above definitions tend to emphasize the uniform holding of the courts that paragraph 1527 (c) (2) and its predecessors excluded those articles that were worn on apparel or carried on or about or attached to the person as *required* or *necessary* to the apparel or person but included articles of the same name, designed *primarily* for their incidental purposes of comfort, convenience, or adornment. Thus, the buckles in the *Weyenberg* case were excluded because they were necessary to the use of the shoe, while incidental buckles were included. The chains in the *Horstmann* case were required by military regulations and so were distinguished from chains that serve only incidental purposes of comfort, convenience, or adornment. The outstanding feature of the pencils in the *Gallagher & Ascher* case was the design which permitted them to collapse and fit into a purse and made them primarily articles of convenience, subordinating their utility as pencils.

The test is not necessarily whether the article is one of *intrinsic* utility. As early as the *Gallagher & Ascher* case, it was noted that some of the articles in the provision were wholly utilitarian, as cigar cutters and match boxes, but were, nevertheless, appropriate exemplars, because the primary purpose that they served was one of

merely incidental convenience. In *Coty (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 33, T. D. 44003, it was said—

* * * the test of classification under this statute was not the use of the articles but the purpose for which they were designed.

If the purpose that the article was designed to serve is primarily of necessity, or requirement, to the apparel on which it is worn or to the person by whom it is carried, the article is not within the provision. On the other hand, if the purpose for which the article was designed was some nonessential element of comfort, convenience, or adornment, the article is included. In this latter category fall many articles that are intrinsically useful, but so designed that their incidental features of comfort, convenience, or adornment predominate. As an example, the pencils involved in the *Gallagher & Ascher* case were certainly intrinsically useful as pencils, but the particular feature which allowed the pencil to be shortened when a slide was pushed into the barrel, at the same time covering and protecting the lead so that it might be carried in a purse or pocket without soiling or puncturing the same, doubtlessly was the predominant feature which characterized them as incidental articles of convenience.

In a series of cases which arose during the life of the Tariff Act of 1913, our appellate court had before it the question of whether items variously described as "watch bracelets," "wristlets or straps for holding wrist watches," and "wrist watch bracelets or wristlets" were properly classifiable under paragraph 356 of that act, which, as has been noted, was a predecessor paragraph to paragraph 1527 (c) (2) of the present act and contained a provision therein substantially the same as that here under consideration, save that it did not include a provision for "watch bracelets."

In *United States* v. *Wittnauer Co.*, 8 Ct. Cust. Appls. 370, T. D. 37628, our appellate court pointed out that such articles were "not of any one of the above statutory enumerations." (Note, of course, that at that time the term "watch bracelets" was not one of the named exemplars contained in the paragraph.) The court then applied the test of classification prescribed in the *Gallagher & Ascher* case, *supra*, and observed that such articles—

* * * are like any one of the * * * enumerated articles in any controlling particular, in that all of the foregoing enumerated articles are per se worn to subserve some purpose of personal comfort, convenience, or adornment, whereas, *these articles are not so worn but to hold in place another article so worn*. That article, however, is not one of those so enumerated by Congress in paragraph 356, but, another and different article, to wit, a watch, expressly made dutiable in another paragraph of the tariff act, to wit [paragraph] 161. *These articles, therefore, are not articles worn on the person for comfort, convenience, or adornment* * * * [Italics added.]

Here, then, is a judicial pronouncement that articles which are not worn alone but are worn only as a necessary adjunct to another article

are *ipso facto* outside the realm of incidental articles of mere personal comfort, convenience, or adornment, and that this is so, even though the article in connection with which they are worn could itself qualify as an incidental article of mere comfort, convenience, or adornment.

Moreover, this doctrine was not new nor confined to the watch bracelets, etc., involved in the *Wittnauer* case. In *Sussfeld, Lorsch & Co.* v. *United States*, 5 Ct. Cust. Appls. 382, T. D. 34875, a case which arose under the Tariff Act of 1909, the question was whether certain small, cheap compasses, with needle and dial, which the evidence showed were complete in themselves but were intended to be set into fieldglass cases and on the backs of watches and other instruments, were within the purview of paragraph 449, a predecessor of the paragraph here under consideration. The court there said:

These compasses, so far as the evidence discloses and so far as we can judge from their appearance, are themselves finished, but their condition, as well as the evidence, indicates that they are to become a part of something else. There is no hole, eyelet, or other provision in the rim or elsewhere by means of which they can be attached to something else, but apparently they are designed to be set or fastened *into* some other article, whatever it may be. In other words, *while complete of themselves* they are intended to be a part of something else, and we think, *of themselves*, they are not designed to be worn on apparel or carried on or about or attached to the person. *If they are subsequently so used, it is because that use attaches to the articles of which they may later become a part.* [Italics, except "into," added.]

This holding was followed in *United States* v. *Strasburger & Co.*, 8 Ct. Cust. Appls. 376, T. D. 37630, and *United States* v. *Strasburger & Co.*, 9 Ct. Cust. Appls. 138, T. D. 37982, and in *United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T. D. 39160.

The 1913 provision, so interpreted, was reenacted with some changes, not material here, as part of paragraph 1428 of the Tariff Act of 1922, and the latter provision was reenacted as paragraph 1527 (c) (2) of the present act, with the addition of the terms "cigar lighters" and "watch bracelets" to the list of named exemplars.

The query then presents itself as to whether the addition of the term "watch bracelets" in the 1930 act was a repudiation *in toto* by Congress of the holding of the *Wittnauer* and other cases to the effect that such articles were, *of themselves*, not articles, designed to be worn on apparel or carried on or about the person, as incidental articles of mere personal comfort, convenience, or adornment, or whether Congress intended that the term should be integrated with the other named exemplars and be subject to the same test of classification.

We have no doubt but that the latter was the intention of Congress. The mere addition of the term to the long list of prescribed exemplars and to language which had long been uniformly judicially construed does not demonstrate any intention to abandon in any respect the test of classification prescribed by the *Gallagher & Ascher* case and the rule

as to its applicability to named exemplars laid down in the *Horstmann Co.* case. Had that been the intention, certainly other and suitable language would have been used. Indeed, it seems to be virtually conclusive that, by the addition of the term "watch bracelets," Congress intended only to provide for those watch bracelets which were by design incidental articles of mere personal comfort, convenience, or adornment. Other watch bracelets, not possessing such character are excluded therefrom, as were the chains in the *Horstmann Co.* case, and the buckles in the *Weyenberg* case.

Although an examination of the legislative history immediately prior to the enactment of the Tariff Act of 1930 does not disclose any matter which would control our decision herein as expressive of the legislative intent, the following interesting material is found in volume XIV, at page 7453, of the series on "Tariff Readjustment—1929. Hearings Before the Committee on Ways and Means, House of Representatives, Washington, 1929":

It appears that when the Committee held hearings in 1929, with a view to making readjustments in the operation of the Tariff Act of 1922, there was presented to it a brief of the New England Manufacturing Jewelers' and Silversmiths' Association, Inc., of Providence, R. I., seeking, among other things, not material here, the addition of the term "watch bracelets" to the list of named exemplars in the provisions of paragraph 1428 of the Tariff Act of 1922. In support of the recommendation, the proponents said:

Your attention is also called to the inclusion of "watch bracelets" among the "articles designed to be worn on apparel or carried on or about or attached to the person." Under the present act watch bracelets have been denied classification under the jewelry paragraph and assessed at lower rates under other paragraphs, although they are obviously jewelry. We submit that *watch bracelets, manufactured in jewelry factories, distributed by the jewelry trade, composed of gold or platinum or other metal, frequently set with precious or semiprecious stones,* and more frequently than otherwise sold independent of the wrist watch to which the user attaches them, should be classified under the jewelry paragraph and pay the duty provided therein for similar articles. The watch-bracelet industry is distinct from the watch and watch-case industries. [Italics added.]

As has been said, while the subsequent enactment into paragraph 1527 (c) (2) of the 1930 act of the term, exactly as requested by the proponents, is not controlling as indicative of the legislative intent, it is, in a sense, corroborative of the conclusion we have reached by other avenues.

We, therefore, proceed to examine the question as to whether the watch bands or bracelets at bar are or are not incidental articles of mere personal comfort, convenience, or adornment.

In approaching a determination of this question, certain facts relevant thereto may be judicially noticed. An awareness of the time of day is essential to most people in their daily pursuits, and for many

of them a watch is a requirement. Most watches are worn on the wrist. In *United States* v. *European Watch & Clock Co.*, *supra*, our appellate court said:

It needs no discussion to demonstrate that ordinarily the primary purpose of carrying a watch is highly utilitarian, and common knowledge and observation demonstrate that as to wrist watches such purpose is generally dominant.

Such watches range widely in price and purpose. Some are functional timepieces and nothing more. The time-telling feature of others is subordinated to their value as personal possessions of beauty and intrinsic value. Like the watches with which they are used, the bands, bracelets, or straps that hold wristwatches in place vary widely in design, purpose, materials, and value. Some are simple and functional. They hold a watch in place and do little, if anything, more. In others, the same functional purpose is subordinated by the use of high styling, precious metals, real or simulated stones, etc., making the article primarily one of ornament or adornment. Its function as an article necessary to hold a watch to the wrist is then incidental to the primary purpose so outlined.

In the *European Watch & Clock Co.* case, *supra*, the appellate court approved a finding by this court that the wristlets or bracelets there involved "are not worn on the person as incidental articles of mere personal comfort, convenience, or adornment, but as a *necessary and useful* attachment to the watch itself." [Italics added.] It considered the situation that greater value and ornamental character of the wristlets or bracelets might submerge or overcome the primarily utilitarian character thereof, but, in the light of the provision as it then existed, before the term "watch bracelets" was added, it held that there was no reason to believe that such a difference between a primarily necessary and useful character and a primarily ornamental character was intended by Congress to require a different classification.

As has been held, the term "watch bracelets," in the present law, must be assumed to refer to those watch bracelets which were primarily designed as incidental articles of mere personal comfort, convenience, or adornment, i. e., those in which the element of necessity of holding a wristwatch to the wearer's wrist has been submerged or overcome by other elements of an incidental nature.

There is no question about the primary function of the articles at bar. They hold a watch in place on the wrist of the wearer. While there may be some comparatively slight ornamental features about them, it is quite obvious that they were not *primarily* designed for personal adornment or ornamental character, and, insofar as that element may exist in the merchandise either as imported or after plating, it is clearly subordinate to their primarily functional character. They are plain, inexpensive articles, serving the same function as the ordinary leather watch strap.

For the foregoing reasons, we hold the merchandise at bar, with the exception of the items that are stainless steel top shell as well as back, as to which items the protests were abandoned by counsel for the plaintiff, to be excluded from the purview of paragraph 1527 (c) (2), under which they were classified by the collector. In the light of the evidence and matters agreed upon, they are properly classifiable as "Articles or wares not specially provided for * * * if composed wholly or in chief value of * * * steel, * * * brass * * * or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer * * *" and dutiable under paragraph 397, as claimed.

Judgment will, therefore, issue sustaining the claim made in each of the protests to that extent and overruling it in all other respects.

### DISSENTING OPINION

OLIVER, Chief Judge: This opinion was originally prepared as the opinion of the court, but, in view of the position taken by my learned colleagues, my views, with certain modifications and comments, are now filed as a dissenting opinion.

At the outset, I want to emphasize that I respectfully and specifically disagree with the statement in the majority opinion that "The different problems presented in this case impel us to consider the decision in the *Dale Products Corp. et al.* case not to be controlling of our action herein." Counsel for plaintiff, in their brief, state—and I am in complete accord therewith—that "the merchandise in this case, the classification and the claim upon which plaintiff relies," and the "problems of statutory construction" are the same as those which were presented in *Dale Products Corp. et al.* v. *United States*, 31 Cust. Ct. 170, C. D. 1565.

While the majority recognizes that "our appellate tribunal has interpreted" the generic provision for "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person," with the named exemplars, "to be limited to incidental articles of mere personal comfort, convenience, or adornment," no mention is made in the majority opinion of the appellate court's identification of the enumerated exemplars as being diversified in character; some of them "are wholly ornamental in character," "some are wholly utilitarian," and "some may be both ornamental and useful," *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343. The interpretation laid down in the *Gallagher & Ascher et al.* case does not impose the limitation that the majority invokes herein.

The term "watch bracelets" appeared, for the first time, as an exemplar in the provision covering "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person," in paragraph 1527 (c) of the Tariff Act of

1930. It may be assumed that with so much stress having been placed on the term "comfort, convenience, or adornment," in decisions arising under prior tariff acts, that the Congress felt that some question might be raised as to whether or not watch bracelets, or watch bands, responded to such uses. To make clear its intent (and the master rule of construction is to ascertain the intent of Congress), the Congress, as I see it, desiring to remove all doubt, added "watch bracelets" to the articles named as exemplars in paragraph 1527 (c) of the 1930 tariff act. I cannot conceive of any way in which Congress could have made its intention more clear than by adding this article, *by name*, to the provisions of paragraph 1527 (c). If Congress did not intend to have watch bracelets held dutiable under that paragraph, why did it specifically say that this is just what it wanted?

Under the clear and unambiguous language of paragraph 1527 (c), *supra*, an article that is a watch bracelet (or a watch band), valued above 20 cents per dozen pieces, and composed of materials specified in the said paragraph is properly classifiable thereunder. To hold otherwise, is to render the designation "watch bracelets" meaningless, and to attribute to Congress a worthless act. This, of course, I am not inclined to do.

The majority, to support its reasoning, has referred to a brief filed by the New England Manufacturing Jewelers' and Silversmiths' Association (Inc.) at hearings before the Committee on Ways and Means (Hearings before Committee on Ways and Means, House of Representatives, Seventieth Congress, Second Session, p. 7453). The same statement was presented in the *Dale Products Corp. et al.* case, *supra*, and the court rejected all reference thereto. What was stated then, I repeat with approval now:

* * * There is no reason under the present issue for resorting to the extrinsic aids suggested by the respective parties. The statutory language under consideration is free from ambiguity; hence, its judicial interpretation must come from the act itself.

In *Schwegmann Brothers et al.* v. *Calvert Distillers Corp.*, 341 U. S. 384, Mr. Justice Jackson, in a concurring opinion, referring to the weight to be given to legislative history, stated, in part, as follows:

* * * It is the business of Congress to sum up its own debates in its legislation. Moreover, it is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill, the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation.

* * * * * * *

By and large, I think our function was well stated by Mr. Justice Holmes: "We do not inquire what the legislature meant; we ask only what the statute

means." Holmes, Collected Legal Papers, 207. See also *Soon Hing* v. *Crowley*, 113 U. S. 703, 710–711.

On the same subject, the Court of Customs and Patent Appeals, in its decision in the case of *United States* v. *Perry Ryer & Co.*, 41 C. C. P. A. (Customs) 18, C. A. D. 524, stated that:

* * * it is well to remember that Congress has never delegated to unofficial persons appearing before its committees advocating legislation, the authority to determine its intention. Only Courts have been clothed with authority in that respect and in construing a statute the courts themselves seek aid extrinsic of it only in cases where it is ambiguous. * In the case of *Railroad Commission of Wisconsin et al.* v. *Chicago, Burlington, Quincy Railroad Co.*, 257 U. S. 563, 588–9, the Supreme Court declared that extraneous aids "are only admissible to solve . doubt and not to create it." See also *United States* v. *Kung Chen Fur Corp.*, 38 C. C. P. A. (Customs) 107, C. A. D. 447, and cases therein cited.

Consistent with the two cases, just hereinabove cited, no consideration should be given to any statement made by a group or an association prior to the time the provisions of paragraph 1527 (c) were enacted into law.

Mention should be made of certain cases cited in the majority opinion, which I find to have no application toward a proper determination of the issue herein. *United States* v. *I. Miller & Sons*, 16 Ct. Cust. Appls. 374, T. D. 43094; *Sussfeld, Lorsch & Co.* v. *United States*, 5 Ct. Cust. Appls. 382, T. D. 34875. The *I. Miller & Sons* case, *supra*, was presented on the principle of commercial designation. The merchandise was excluded from a provision for shoe buckles, because appellee failed to establish a commercial meaning of "shoe buckles" for the articles involved. The court found the merchandise to be shoe ornaments of a type or class that was included in the provision for articles, designed to be worn on apparel or carried on or about or attached to the person, as classified by the collector. The *I. Miller & Sons* case has no bearing on the outcome of the present issue.

Equally distinguishable is *Sussfeld, Lorsch & Co.* v. *United States*, 5 Ct. Cust. Appls. 382, T. D. 34875. That case involved certain small compasses, which were held to be classifiable as manufactures of metal. In excluding them from the provision for articles, designed to be carried on or about or attached to the person, in paragraph 448 of the Tariff Act of 1909, under which the case arose, the appellate court stated as follows:

The first part of paragraph 448 relates wholly to chains, pins, collar, cuff, and dress buttons, charms, combs, millinery or military ornaments, and other articles not *eo nomine* named, all of which would seem to be articles chiefly for ornament rather than utility, and we think these compasses or the field-glass cases, watches, or other instruments of which they are to become a part are not within the intendment of that part of the paragraph.

The important deduction to be drawn from the *Sussfeld, Lorsch & Co.* case, *supra*, is that, in paragraph 448 of the Tariff Act of 1909, the provision for articles, designed to be carried on or about or attached to the person, appeared with statutory language that was subjected to judicial construction, materially different from that which has been applied to paragraph 1527 (c), *supra*, as developed, *infra*, in my review of the history of that statutory provision.

The majority opinion holds as follows:

* * * the term "watch bracelets," in the present law, must be assumed to refer to those watch bracelets which were primarily designed as incidental articles of mere personal comfort, convenience, or adornment, i. e., those in which the element of necessity of holding a wristwatch to the wearer's wrist has been submerged or overcome by other elements of an incidental nature.

The function of a watch bracelet is to hold a wristwatch on the wearer's wrist. To some, this might well be a source of comfort. To some, it might be very convenient. To others, it might even be considered as an article of adornment. The presence or absence of any of these elements is not controlling. The Congress, adding, as it did, the designation, "watch bracelets," to the named exemplars in paragraph 1527 (c), has, by that act, clearly indicated that watch bracelets, *as such*, are to be subject to the provisions of that paragraph.

My views in this case are the same in every respect as those expressed in our decision in the *Dale Products Corp. et al.* case, *supra*, and, in my original preparation of a decision herein, I repeated much of what was stated in that case. I deem it appropriate to adhere to that presentation, which appears on the following pages of this dissenting opinion.

In the decision in the *Dale Products Corp. et al.* case, the merchandise under consideration was described as follows:

These watch bands are approximately 5 inches in length. Plaintiffs concede that they "are used to encircle the wrist and hold a watch in place" (R. 3). They are of "spring link construction" that imparts to them "expansion facility," permitting the articles to be slipped over the hand and fitted securely to the wrist. One is made of stainless steel; the other is of brass. The color has a decorative effect, adding eye appeal to the articles. The parties have stipulated that they are "composed of either steel, or brass, or both; that they are not plated with platinum, gold or silver, or colored with gold lacquer" (R.7). These watch bands are relatively low-priced articles that are sold principally to jobbers and "chain stores primarily, drug stores, automotive stores, dry goods stores, candy stores, tobacco shops" (R. 620).

By agreement between the parties, it is established in this case that the "watch bands" or "watch bracelets" in question are designed and used for attachment to a wristwatch to hold the watch in place on the wrist; that these articles are of spring link construction, permitting them to be expanded and passed over the hand to fit snugly on the wrist, when used to hold a watch in place; that they are not

plated with platinum, gold, or silver, or colored with gold lacquer; and that they are valued at over 20 cents per dozen pieces.

No question of commercial designation is involved herein. There is testimony to the effect that the articles in question are generally known in the trade as "watch bands," or "watch bracelets," or "watch attachments" and that the three terms are used interchangeably. Plaintiff prefers to designate the articles under consideration as watch bands, while defendant's witnesses referred to them as expansion watch bracelets or expansion watch attachments.

Plaintiff's testimony, introduced through three witnesses, is directed largely, if not entirely, toward establishing that the watch bands under consideration are relatively low-priced articles; that they are not handled by the jewelry trade; and that they are sold to five-and-ten-cent stores, importers of cheap watches, candy wholesalers, drug jobbers, premium jobbers, novelty jobbers, and general merchandise jobbers.

Defendant's testimony tends to emphasize the ornamental features of the expansion watch bracelets under consideration (plaintiff's illustrative exhibit 1, defendant's exhibit A, and defendant's collective illustrative exhibit C). In this connection, it appears that the so-called shells are made in such a fashion with facets, angles, and grooves so as to make them ornamental. Defendant's testimony, contradicting statements made by witnesses for the plaintiff, indicates that watch bracelets, such as those in question, are sold in "Regular jewelry stores that sell watches, gold jewelry, silver jewelry, all types of jewelry."

Since the record herein supplies a factual foundation substantially the same as that which was presented in the *Dale Products Corp. et al.* case, *supra*, and the problems of statutory construction are the same as those involved in the cited case, I find it appropriate to discuss here, as I did in the *Dale Products Corp. et al.* case, a line of decisions that construed the statutory language "Articles * * * designed to be worn on apparel or carried on or about or attached to the person."

The case of *C. H. Hanson* v. *United States*, 20 Treas. Dec. 384, G. A. 7179, T. D. 31348, is the earliest expression with respect to this provision. That case arose under the Tariff Act of 1909, wherein paragraph 448, so far as pertinent to the present issue, reads as follows:

Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished, if set with imitation precious stones composed of glass or paste (except imitation jet), or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal * * * and designed to be worn on apparel or carried on or about or attached to the person * * * all of the foregoing * * * whether or not denominatively or otherwise provided for in any other paragraph of this Act * * *.

The Board of General Appraisers (now the United States Customs Court) analyzed the foregoing statutory language in the *C. H. Hanson* case as follows:

Paragraph 448 must be construed to harmonize, as far as practicable, with other provisions of the law, and the legislative will with regard to classes of merchandise the subject of special legislation in other schedules and paragraphs may not be indiscriminately brushed aside by reason of a phrase contained in a paragraph devoted to ornamental articles in the nature of luxuries designed to be carried on or about the person for display, and which, as luxuries, were regarded by Congress as a proper medium for increasing the revenue.

The explicit provision that certain articles are to be removed from paragraphs where they would otherwise be subject to duty and be included in paragraph 448 is not to be disregarded, however, and the identity of the particular class of goods Congress had in mind can best be established by a comparison thereof with those named in paragraph 448. Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments set with imitation precious stones or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal, valued at 20 cents or more per dozen pieces, are all ornaments intended to be worn on or about the person for display. * * * It appearing that everything named in the paragraph is in the nature of articles, or materials or parts of articles, designed to be worn on apparel or carried on or about or attached to the person for purposes of adornment, in our opinion it follows that the provision for "all other articles of every description" must be measured by the same standard.

We do not hold that all articles of utility are excluded from paragraph 448, nor, on the other hand, that articles of utility which may be carried in the pocket, although ornamental and composed of superior materials, necessarily fall for duty under that paragraph. The true test would seem to be: Were the articles designed for utilitarian purposes and merely for convenience ordinarily carried or worn on or about the person, or were they designed to be carried on or about the person for ornamental effect?

Although the *C. H. Hanson* case was not appealed, the statutory construction expressed therein finds confirmation in the decision of *Lent* v. *United States*, 1 Ct. Cust. Appls. 542, T. D. 31549. In that case, the merchandise consisted of fancy vest buttons made of brass, plated, some of which were studded with imitation precious stones. The articles were classified as "dress buttons," one of the *eo nomine* designations included within paragraph 448, *supra*. In sustaining the collector's classification and adhering to the limitation expressed in the *C. H. Hanson* case, that the articles contemplated by the said paragraph were only those primarily ornamental in character, the court said:

Paragraph 448 appears to be confined to articles of personal adornment, and it would seem therefore that by "dress buttons" was meant just such buttons as those under consideration. If the term "dress buttons" does not mean a fancy button—a button intended to adorn or ornament the dress—a button designed for something more than mere utility, it is hard to see just what meaning consistent with paragraph 427 could be given to it. * * * In our opinion, the buttons which are the subject of appeal are dress buttons designed to be worn on the apparel. Some of them are set with imitation precious stones, and giving to

the collector's decision the benefit of the presumption of correctness to which it is entitled all of them are composed in chief value of brass and valued at more than 20 cents per dozen pieces. They are therefore dutiable as assessed * * *.

The important phase of the judicial interpretation enunciated in the two cited cases is the fixing of a standard—finding that the specifically enumerated articles are ornamental articles in the nature of luxuries—that formed the basis for classification of all merchandise contemplated by the said provision in paragraph 448.

In the succeeding tariff acts, following the Tariff Act of 1909, the paragraphs containing the provision for articles "designed to be worn on apparel or carried on or about or attached to the person" gave rise to new judicial pronouncements based on materially different language employed. The Tariff Act of 1913 (paragraph 356) and the Tariff Act of 1922 (paragraph 1428) provided for articles "designed to be worn on apparel or carried on or about or attached to the person" as follows:

* * * and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, * * *.

The foregoing statutory language, when it appeared in paragraph 356 of the Tariff Act of 1913, was construed in the case of *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T. D. 35343. There, the court described the merchandise under consideration as "so-called 'prorepel' lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel." The pencils were composed entirely of base metal, except that some of them had imitation precious stones set in their top ends. Referring to the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," the court stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular.

On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

The foregoing judicial interpretation given in the *Gallagher & Ascher et al.* case was followed in *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, which construed the provisions of paragraph 1428 of the Tariff Act of 1922. After referring to earlier cases, including the *Gallagher & Ascher et al.* case, the late Judge Hatfield, speaking for the court in the *Horstmann Co.* case, stated as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental* articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

The influence herein of the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases comes from their clear expressions to the effect that paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922, so far as they affect the present issue, included articles "of utility or of adornment, or they may possess both of these qualities." That statutory construction, giving a broadened scope to the said paragraphs, was a definite departure from the in-

terpretation placed upon the earlier provision in paragraph 448 of the Tariff Act of 1909, which was limited, under the *C. H. Hanson* and *Lent* cases, *supra*, to articles that were predominantly ornamental. Obviously, the later judicial pronouncement was based upon the new and additional language found in paragraphs 356 and 1428, *supra*, as distinguished from paragraph 448 of the Tariff Act of 1909. The earliest provision, as shown in the Tariff Act of 1909, listed nine *eo nomine* designations, "all ornaments," that were followed by the general provision for "all other articles of every description." In the later Tariff Acts of 1913 and 1922, paragraph 356 and paragraph 1428, *supra*, provision was made, first, for the general classification of articles "designed to be worn on apparel or carried on or about or attached to the person," and then followed the enumeration of 23 exemplars which the appellate court identified as diversified in character. In other words, classification under paragraph 448 of the Tariff Act of 1909 was controlled primarily by the *eo nomine* designations that introduced the paragraph. In paragraphs 356 and 1428 of the Tariff Acts of 1913 and 1922, respectively, the controlling language was a generic classification, embracing a wide variety of articles whose predominant characteristic was that "they must be 'incidental articles of mere personal comfort, convenience, or adornment.' " (*Horstmann Co.* case, *supra*.)

The foregoing review of judicial pronouncements and their consequent statutory interpretation of the provision for "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person," presents no conflict, as suggested in plaintiff's brief, with the decision in *United States* v. *Bailey, Green & Elger, Inc.*, 30 C. C. P. A. (Customs) 228, C.A.D. 237, which involved metal buttons, the face of each being embossed with a design and the back or underneath part having a small metal loop with which the button might be attached to a garment. The merchandise had been classified under the provision for articles, designed to be worn on apparel or carried on or about or attached to the person, "such as and including * * * dress buttons," in paragraph 1527 (c) (2), *supra*, and was claimed to be properly classifiable under the provision in paragraph 349 of the Tariff Act of 1930, as amended, for "metal buttons embossed with a design, device, pattern, or lettering." In sustaining the importer's contention and excluding the buttons from the provisions of said paragraph 1527 (c) (2), the appellate court held that the provision in paragraph 349 "covers all metal dress buttons of a particular class; that is, all metal buttons 'embossed with a *design, device, pattern, or lettering*.' " [Italics quoted.]

The present issue, as hereinabove set forth, involves the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," as contemplated by paragraph 1527 (c)

of the Tariff Act of 1930. The language thereof, so far as pertinent herein, is identical with the phraseology employed in paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922, except that the designation "watch bracelets," as an exemplar, has been added to those which were enumerated in the provisions of paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922. It follows, therefore, that the judicial interpretations, as set forth in the *Gallagher & Ascher et al.* and *Horstmann Co.* cases, *supra*, will also apply in construing the language of paragraph 1527 (c), invoked herein by the collector, and as hereinabove set forth. Thus, I hold that the provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person, such as and including * * * watch bracelets, and like articles," in said paragraph 1527 (c) includes articles "of utility or of adornment, or they may possess both of these qualities" (see *Horstmann Co., supra*), and which "are carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment," (see *Gallagher & Ascher et al., supra*).

In *Weyenberg Shoe Mfg. Co.* v. *United States*, 38 C. C. P. A. (Customs) 122, C. A. D. 448, prominently referred to in the majority opinion, the merchandise consisted of buckles used exclusively in the manufacture of military-type oxford shoes for officers and noncommissioned men in the Armed Forces of the United States and also by civilians who desired this type of shoes. The court found that "The buckles are firmly attached to the shoes and together with a strap covering the instep portion of the shoe, fasten the shoe to the wearer's foot in the same manner as shoe laces, eyes, or latches are ordinarily used." Excluding the articles from the provision of paragraph 1527 (c), the court stated:

It is clear to us that the involved buckles are not such as are "incidental articles of mere personal comfort, convenience, or adornment," and are for that reason removed from classification under paragraph 1527.

The decision in the *Weyenberg Shoe Mfg. Co.* case, *supra*, is consistent with earlier ones, holding that vocational articles are removed from classification as articles, designed to be worn on or carried about the person. *United States* v. *Sussfeld, Lorsch & Co.*, 7 Ct. Cust. Appls. 126, T. D. 36454; the *Horstmann Co.* case, *supra*. The *Sussfeld, Lorsch & Co.* case arose under the Tariff Act of 1913 and involved pedometers, which the court described as "instruments resembling watches, having a little catch attached by which they are fastened to the vest pocket." Their use was to indicate the distance walked by the persons carrying them. The record established that the pedometers were chiefly used by "employees of railroad or telephone

companies in laying out posts or by land companies in measuring plots of land." The court expressed its conclusion as follows:

> The articles here involved are not articles which in any proper sense can be termed articles of mere personal comfort, convenience, or adornment. They are vocational instruments and not "such as" or "like" the articles enumerated.

The *Horstmann Co.* case, *supra*, arose under the Tariff Act of 1922 and involved brass saber chains, which the court described as follows:

> The chains in question were designed for the exclusive use of officers in the military service. They are an essential part of such officers' equipment—made such by military regulations and worn as such. They are not worn as incidental articles of mere personal comfort, convenience, or adornment, but as an essential part of their equipment. The chains in question are vocational articles; and while chains are *eo nomine* provided for in paragraph 1428, these are not the kind intended to be covered by that designation. *United States* v. *Sussfeld, Lorsch & Co., supra.*

It is clear that the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," such as the articles listed by name, and "like articles," in paragraph 1527 (c), is not limited to merchandise ornamental in character, as alleged by plaintiff. On the contrary, the provision is sufficiently broad in scope to include articles that serve a utilitarian purpose, as well as articles that are both ornamental and utilitarian in character. With reference to the exemplar, "watch bracelets," that is directly involved herein, the controlling test for classification under said paragraph 1527 (c) is that the watch bracelets, and like articles, shall be valued at more than 20 cents per dozen pieces, and be composed of materials provided for in the paragraph. As this description of the imported articles is not disputed, it follows that the classification of the collector should be sustained.

Counsel for plaintiff have cited three cases wherein the merchandise consisted of wristlets or straps fitted with metal buckles and used for holding wristwatches. *United States* v. *Wittnauer Co.*, 8 Ct. Cust. Appls. 370, T. D. 37628; *United States* v. *Strasburger & Co.*, 9 Ct. Cust. Appls. 138, T. D. 37982; *United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T. D. 39160. Plaintiff's brief, stressing the importance of those cases, states that—

> All three cases stand as undisputed authority for the proposition that watchbands composed of metal and other materials designed to be attached to a watch and to hold it in place are not mere incidental articles of personal comfort, convenience or adornment and, therefore, are not described by the statutory provision for articles designed to be carried on the person.

In support of that contention, counsel for plaintiff have quoted from the *Wittnauer Co.* case, *supra*, as follows:

> It is conceded that the importations are valued at over 20 cents per dozen pieces. *They, however, are not of any one of the above statutory enumerations*

*Neither are they a part of any one such. Nor is it satisfactorily pointed out that they are like any one of the above enumerated articles in any controlling particular,* in that all of the foregoing enumerated articles are per se worn to subserve some purpose of personal comfort, convenience, or adornment, whereas, these articles are not so worn but to hold in place another article so worn. That article, however, is not one of those so enumerated by Congress in paragraph 356, but, another and different article, to wit, a watch, expressly made dutiable in another paragraph of the tariff act, to wit, 161. These articles, therefore, are not articles worn on the person for comfort, convenience, or adornment, nor are they parts of any such article made dutiable because so worn under paragraph 356. [Italics added.]

In the *Strasburger & Co.* case, *supra*, the foregoing quotation was repeated with approval, and the court observed that the wristband "simply holds this otherwise completed mechanism [a wristwatch] in a *convenient* position for use." [Italics supplied.] The *European Watch & Clock Co.* case, *supra*, cited and followed the said *Wittnauer Co.* and the *Strasburger & Co.* cases, *supra*.

No stronger argument could be presented in support of my position. The fact that Congress, with these decisions before it, deliberately added the designation, "watch bracelets," to the provisions of paragraph 1527 (c) of the Tariff Act of 1930, clearly evidences a congressional intent to have done just what the collector did in the present case. Each of the three cases, just cited, arose under the Tariff Act of 1913 (paragraph 356), which did not include "watch bracelets" as one of the named exemplars governing the application of the generic classification for "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person." The omission from paragraph 356, *supra*, has been supplied in paragraph 1527 (c) of the Tariff Act of 1930, where there has been included, for the first time, the designation "watch bracelets," as one of the named exemplars. The added exemplar is to be viewed as manifesting a congressional intent to extend the provision for "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person," so as to include therein *"watch bracelets, and like articles"* [italics added], composed of the materials specified in the said paragraph. In applying such a broader application to the statutory language of said paragraph 1527 (c), a positive effect is given to the judicial interpretation, set forth in the *Gallagher & Ascher et al.* case, *supra*, where the appellate court held, in effect, that the provisions of that paragraph controlled the classification of imported articles that are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are any of the enumerated exemplars and like articles in their customary use. Such an enlarged scope of paragraph 1527 (c), *supra*, encompasses the watch bands or watch bracelets involved herein and, therefore, in the light of plaintiff's admission that the merchandise

and the legal problems now before us are the same as those which were presented in the *Dale Products Corp. et al.* case, *supra*, I can and do repeat now, with the same force and effect, the reasoning followed in the cited case, holding the merchandise properly classifiable under paragraph 1527 (c), as follows:

The watch bands under consideration are exclusively used to encircle the wrist of the user for the purpose of holding a watch in place. That they are relatively inexpensive and are used only with cheap watches, as shown by the present record, have no bearing on their tariff classification. They are "valued above 20 cents per dozen pieces," and, therefore, satisfy the only element of value essential for classification under paragraph 1527 (c). Most important to the present issue is the character of usage of these watch bands.

It is a matter of common knowledge that the purpose of carrying a watch is highly utilitarian, and that the manner in which a watch is carried varies, depending on the personal preference of the user. A watch may be carried in the pocket, or attached to clothing, or held to the wrist, but whatever method may be employed requires an accessory for convenience in carrying the watch. For instance, a chain is commonly used in connection with a watch carried in the pocket; so-called lapel watches, used by women, are held to clothing by some sort of a pin, and a watch bracelet holds a wrist watch. It is significant that each of those accessories—"chains," "pins," and "watch bracelets"—are among the named exemplars enumerated in paragraph 1527 (c). The watch bands in question, by their design and their exclusive use, are, like the chains, pins, and watch bracelets just mentioned, articles of convenience designed to be carried on or about or attached to the person, and, as such, are included within the classes of merchandise contemplated by paragraph 1527 (c), *supra*, as assessed by the collector.

For all of the reasons hereinabove set forth and following our decision in the *Dale Products Corp. et al.* case, *supra*, the watch bands or watch bracelets in question should be classified under the provisions of paragraph 1527 (c) of the Tariff Act of 1930 and dutiable at the rate of 65 per centum ad valorem under paragraph 1527 (c) (2), as modified, *supra*, as assessed by the collector.

The protests should be overruled, and the decision of the collector in each instance should be affirmed.